**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **SHERONE DENNISE YORK,** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| vs. | * CIVIL ACTION NO. 16-000312-B |
| | * |
| **NANCY BERRYHILL,**[1] | * |
| **Acting Commissioner of Social** | * |
| **Security,** | * |
| | * |
| **Defendant.** | * |

## ORDER

Plaintiff Sherone Dennise York (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On May 2, 2017, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 19). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and

---

[1] Nancy Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I. <u>**Procedural History**</u>[2]

Plaintiff protectively filed her application for benefits on March 6, 2013, alleging disability beginning August 12, 2010, based on an amputated left arm from a motor vehicle accident, swelling in her leg, and headaches. (Doc. 14-1 at 11, 15). Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Walter Lassiter, Jr. (hereinafter "ALJ") on July 11, 2014. (Doc. 13-2 at 48). Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (Doc. 13-2 at 50). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Doc. 13-2 at 72). On November 24, 2014, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Doc. 13-2 at 25). The Appeals Council denied Plaintiff's request for review on April 20, 2016. (Doc. 13-2 at 4). Therefore, the ALJ's decision dated November

---

[2] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF, not the page numbers assigned by the Agency. Because the transcript was divided into separate documents, the Court's citations include the appropriate CM/ECF document number.

24, 2014, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties waived oral argument on May 2, 2017 (Doc. 18) and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issue on Appeal

> 1. Whether the ALJ erred in finding that Plaintiff does not meet the criteria for Listing 12.05C?

## III. Factual Background

Plaintiff was born on July 30, 1974 and was thirty-nine years of age at the time of her administrative hearing on July 11, 2014. (Doc. 14-1 at 11; Doc. 13-2 at 48). Plaintiff graduated from high school and completed one and a half years of college studies. (Doc. 14-2 at 149).

Plaintiff worked from 1997 to 2007 as a stocker at Walmart until she lost her arm in a motor vehicle accident. (Doc. 14-2 at 149; Doc. 14 at 20; Doc. 14-1 at 3). At the administrative hearing, Plaintiff testified that she cannot work due to phantom pain in her arm, inability to lift, problems with balancing while standing, and swollen knees from obesity. (Doc. 13-2 at 59, 62-63, 65, 68-69).

## IV. Standard of Review

In reviewing claims brought under the Act, this Court's

role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

---

[3] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

## V. Statutory And Regulatory Framework

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir.

1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler*,* 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler*,* 749 F.2d 1562, 1564 (11th Cir. 1985)).

## VI. Discussion

### A. The ALJ did not err in finding that Plaintiff does not meet the criteria for Listing 12.05C.

As noted, *supra*, Plaintiff raises only one issue on appeal, that is, whether the ALJ erred in finding that she does not meet

6

the criteria for Listing 12.05.[4] (Doc. 15 at 3). According to Plaintiff, her Full Scale IQ score of 67, combined with the diagnosis of mild mental retardation by consultative psychologist, Dr. Richard Reynolds, Ph.D., satisfies the cognitive criteria of Listing 12.05C (mental retardation). (Doc. 15 at 8). Plaintiff further argues that the ALJ erred in finding that her IQ score was invalid. (Id. at 9-10). Having carefully reviewed the record in this case, the Court finds that Plaintiff's claim is without merit.

In order for Plaintiff to meet Listing 12.05C (mental retardation), she must present evidence of "[a] valid verbal, performance or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."[5] 20 C.F.R. Part 404, Subpart P,

---

[4] The Court notes at the outset that Plaintiff does not take issue with the ALJ's findings related to her physical impairments. Rather, Plaintiff argues only that the ALJ erred in finding that she does not meet cognitive criteria for Listing 12.05C. Therefore, the Court's discussion of the medical evidence is limited to this issue.

[5] For purposes of Listing 12.05C, the second prong requirement is met once there is a finding that the claimant has an additional severe impairment because the requirement of "significant work-related limitation of function" "involves something more than 'minimal' but less than 'severe.'" Johnson v. Colvin, 2014 U.S. Dist. LEXIS 13497, *7, 2014 WL 413492, *3 (S.D. Ala. Feb. 3, 2014) (quoting Edwards by Edwards v. Heckler, 755 F.2d 1513, 1515 (11th Cir. 1985)). In this case, the ALJ found Plaintiff's obesity and status post left arm amputation with subsequent treatment for phantom pain to be severe, and the parties do not dispute that finding. (Doc. 13-2 at 27). Therefore, the second

7

Appendix 1 § 12.05(C). In addition, she must satisfy the "diagnostic description" of mental retardation in Listing 12.05 (the listing category for mental retardation/intellectual disability),[6] which provides that mental retardation "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.05; see also Perkins v. Commissioner, Soc. Sec. Admin., 553 Fed. Appx. 870, 873 (11th Cir. 2014) (Listing 12.05(C) "requires a showing that the claimant meets the diagnostic criteria of Listing 12.05, including deficits in adaptive functioning; a qualifying IQ score; onset before age 22; and the requisite deficits in work-

---

prong of Listing 12.05C, requiring a physical or other mental impairment imposing an additional and significant work-related limitation of function, is not at issue in this case.

[6] On August 1, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability." See Hickel v. Commissioner of Soc. Sec., 539 Fed. Appx. 980, 982 n.2 (11th Cir. 2013) (citing 78 Fed. Reg. 46,499, 46,501, to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1)). "This change was made because the term 'mental retardation' has negative connotations, and has become offensive to many people. Id. (citations and internal quotation marks omitted). "The Social Security Administration stated that the change does not affect the actual medical definition of the disorder or available programs or services." Id. (citations and internal quotation marks omitted). As in Hickel, this opinion uses the term "mental retardation" and "intellectual disability" interchangeably.

8

related functioning.").

The law in this Circuit provides that a valid IQ score of 60-70 creates a rebuttable presumption that the claimant manifested deficits in adaptive functioning prior to the age of twenty-two. See Hodges v. Barnhart, 276 F. 3d 1265, 1268-69 (11th Cir. 2001). Thus, "a claimant meets the criteria for presumptive disability under section 12.05C when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than a 'minimal effect' on the claimant's ability to perform basic work activities." Smith v. Commissioner of Soc. Sec., 535 Fed. Appx. 894, 897 (11th Cir. 2013)(quoting Lowery v. Sullivan, 979 F. 2d 835, 837 (11th Cir. 1992)).

The presumption under 12.05C can be rebutted, however, when the IQ score is inconsistent with record evidence of a claimant's work history, daily activities, and behavior.[7] See

---

[7] Though not at issue in this case, the Court notes that, in addressing the "adaptive functioning" aspect of Listing 12.05C, the Eleventh Circuit has sustained the rejection of claims under this Listing where the claimant's IQ score was significantly inconsistent with his/her adaptive functioning, despite a qualifying IQ score. For example, in Perkins v. Commissioner, Soc. Sec. Admin., 553 Fed. Appx. 870 (11th Cir. 2014), the Eleventh Circuit upheld the ALJ's finding that Listing 12.05C was not met where the plaintiff performed skilled jobs, including as a skilled cook, managed other workers, and made contradictory claims regarding his education and employment history. Also, in Hickel v. Commissioner, 539 Fed. Appx. 980, 984 (11th Cir. 2013), the Eleventh Circuit held that the ALJ did not err where he acknowledged that the claimant had a valid IQ

9

Popp v. Heckler, 779 F.2d 1497, 1499-1500 (11th Cir. 1986).

Indeed, neither a diagnosis of mental retardation nor a valid IQ

---

score between 60 and 70, applied the presumption established by Hodges v. Barnhart, 276 F. 3d 1265, 1268-69 (11th Cir. 2001), and found that the presumption was rebutted by other evidence that showed that the claimant did not have "deficits in adaptive functioning." In reaching that decision, the court noted that, although the claimant had been enrolled in special education classes, she worked part-time in a nursery, was a high school graduate, prepared simple meals, dressed herself, drove herself to work, attended church regularly, and socialized with friends. Id. at 984-985. See also Popp, 779 F.2d at 1499-1500 (affirming finding that Listing 12.05C was not met where the plaintiff had worked skilled jobs, obtained a college degree, and had exaggerated his deficits when examined); White v. Colvin, 2015 U.S. Dist. LEXIS 28277, 2015 WL 1013117, *4 (S.D. Ala. Mar. 9, 2015) (The ALJ properly found that, despite a Full Scale IQ score of 63, the plaintiff did not have significant limitations in adaptive functioning where the record reflected that, although the plaintiff had been in special education classes, he lived alone, maintained his financial affairs, and consistently worked at several different jobs); Robinson v. Colvin, 2015 U.S. Dist. LEXIS 43338, 2015 WL 1520431, *11 (S.D. Ala. Apr. 2, 2015) (where the plaintiff lived independently without a highly supportive living arrangement, cared for her personal needs, and had a significant work history, the ALJ properly found that her Full Scale IQ score of 60 was inconsistent with the record evidence regarding her daily activities); Johnson, 2014 U.S. Dist. LEXIS 13497, 2014 WL 413492, at *4 (although the ALJ never stated that the claimant failed to meet Listing 12.05C, the ALJ's finding that, despite a Full Scale IQ score of 62, the claimant had high adaptive skills, *i.e.*, he had the capacity to take care of his own needs, perform activities of daily living, and had successfully performed four different jobs since leaving high school, was sufficient to support his decision that the claimant was not mentally retarded); Lyons v. Astrue, 2009 U.S. Dist. LEXIS 128950 (M.D. Fla. May 24, 2009), adopted by 2009 U.S. Dist. LEXIS 48535, 2009 WL 1657388 (M.D. Fla. June 10, 2009)(The ALJ's finding that the claimant did not meet Listing 12.05C was supported by substantial evidence that demonstrated that the claimant had a high school diploma, was not in special education classes, completed his own social security forms, and had earnings from 1983 – 1990 between $13,696 and $18,408 per year).

10

score is conclusive of mental retardation where the diagnosis and IQ score are inconsistent with other record evidence regarding the claimant's daily living activities and behavior. See Robinson, 2015 U.S. Dist. LEXIS 43338 at *32, 2015 WL 1520431 at *11; Perkins, 553 Fed. Appx. at 873-74. Accordingly, the ALJ is tasked with determining whether there is sufficient evidence (relating to plaintiff's daily life) to rebut the presumption. See Grant v. Astrue, 255 Fed. Appx. 374, 375 (11th Cir. 2007); Hartman v. Colvin, 2014 U.S. Dist. LEXIS 91467, *7, 2014 WL 3058550, *3 (S.D. Ala. July 7, 2014).

The pivotal issue in this case is whether substantial evidence supports the ALJ's finding that Plaintiff's Full Scale IQ score was invalid and, thus, that Plaintiff did not meet the criteria of Listing 12.05C. "[T]he ALJ is allowed some leeway to evaluate other evidence [other then I.Q. test score] when determining the validity of an I.Q. score. . . ." Henry v. Barnhart, 156 Fed. Appx. 171, 173 (11th Cir. 2005) (quoting Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992)). "An ALJ should examine whether the results of an I.Q. test are consistent with the other medical evidence and the claimant's daily activities and behavior." Id. (citing Popp, 779 F.2d at 1499-1500).

In determining whether the ALJ in this case properly found Plaintiff's Full Scale IQ score of 67 to be invalid, the Court

is guided by the Eleventh Circuit's decision in Popp, 779 F.2d at 1500, in which the court held that the ALJ was not required to find that the claimant met the criteria of Listing 12.05C based on the results of his IQ test, but, rather, the ALJ was "required to examine the [test] results in conjunction with other medical evidence and the claimant's daily activities and behavior." Id. The court concluded that, because the results of the IQ test were inconsistent with other evidence in the record, substantial evidence supported the ALJ's finding that the IQ results were "incredible" and, thus, did not meet the Listing. Id.

As stated, the ALJ here found that Plaintiff's Full Scale IQ score of 67 was invalid and that the diagnosis of mild mental retardation by consultative psychologist, Dr. Reynolds, which was based on Plaintiff's IQ score of 67, was inconsistent with Dr. Reynolds' own findings and opinions, as well as with the totality of the other medical evidence and Plaintiff's activities of daily living and behavior.[8] (Doc. 13-2 at 29). In reaching that decision, the ALJ pointed to the following

---

[8] Plaintiff also takes issue with the ALJ's finding that her alleged impairment of mild mental retardation was "not medically determinable." (Doc. 13-2 at 29-30, 40). Because the Court has found, for the reasons stated herein, that substantial evidence supports the ALJ's finding that Plaintiff's Full Scale IQ score was invalid and that Dr. Reynolds' diagnosis of mild mental retardation was inconsistent with the totality of the evidence, Plaintiff's argument in this regard is without merit.

12

evidence: Consultative psychologist, Dr. Richard Reynolds, Ph.D., evaluated Plaintiff on February 16, 2010, and documented that she graduated from high school in regular classes (repeating the fifth grade), that she attended college for a year and a half taking general studies, that she read books in her spare time, that she managed her own finances, and that she had a drivers license and drove. (Doc. 13-2 at 29; 14-2 at 148). Dr. Reynolds' report shows that Plaintiff was seeking disability based on severe pain in her amputated arm and problems standing for long periods of time because of blood clots in her legs. (Doc. 14-2 at 149). Plaintiff reported to Dr. Reynolds that she had problems with sadness, worry, and trouble finishing what she started but denied any psychiatric treatment. (Doc. 14-2 at 149). Plaintiff reported that she was living in an apartment with her four children, ages ten, three, two, and one and that she shared in the housework, cooking, and grocery shopping with other relatives who came over and assisted. (Doc. 14-2 at 149). Plaintiff reported having friends and going to church. (Doc. 14-2 at 149). Plaintiff reported working for Walmart from 1998 to 2007 as a stocker until she lost her arm in a motor vehicle accident. (Doc. 14-2 at 149). Plaintiff's mental status examination revealed that she was alert and oriented, cooperative, had normal speech, logical thought content, normal thought associations and mood,

normal recent and remote memory, and normal judgment, insight, and decision making abilities. (Doc. 14-2 at 149). In addition, Plaintiff was able to calculate three out of three single-digit multiplication problems and two out of two simple word problems. (Doc. 14-2 at 149). She correctly identified the current and past presidents and was able to give birth dates of significant people in her life and relevant dates of past employment. (Doc. 14-2 at 149). Dr. Reynolds concluded: "In this evaluator's opinion the claimant's ability to understand, carry out, to remember instructions, and to respond appropriately to supervision, co workers, work pressures in a work setting may be somewhat impaired by *Major Depression, mild*." (Doc. 14-2 at 150) (emphasis added). Dr. Reynolds assessed no other limitations or impairments and stated that Plaintiff would not need assistance with any awarded funds. (Doc. 14-2 at 150). Dr. Reynolds did not at any time suggest the possibility of mental retardation. (Doc. 14-2 at 149). On that date, Dr. Reynolds also completed a Medical Source Statement (Mental) in which he opined that Plaintiff had no limitations in her ability to understand, remember, and carry out simple instructions or to make judgments on simple work-related decisions and had only mild limitations related to complex decisions and instructions. (Doc. 14-2 at 151-52).

Three years later, on September 9, 2013, Plaintiff returned

14

to Dr. Reynolds for a Vocational Rehabilitation Psychological Evaluation. (Doc. 14-2 at 210). At that time, Plaintiff again denied any psychiatric treatment and described living independently with her children, while needing some help with bathing and dressing. (Doc. 14-2 at 210-11). Plaintiff's mental status examination again revealed that she was alert, cooperative, and oriented, that she had normal speech, normal thought associations, logical thought content, good recent and remote memory, normal judgment, normal insight, and normal decision making abilities. (Doc. 14-2 at 211). On that occasion, Dr. Reynolds administered the WAIS-IV Intelligence test, and Plaintiff received a Full Scale IQ score of 67, indicating mild mental retardation. (Doc. 14-2 at 211-12). Plaintiff also took the WRAT-III and scored at the seventh grade level in reading and at the sixth grade level in spelling and math. (Doc. 14-2 at 212-13). Dr. Reynolds observed that Plaintiff had exhibited appropriate effort and motivation during testing, and, thus, he considered the results to be a valid estimate of her intellectual functioning and academic abilities. (Doc. 14-2 at 213). Dr. Reynolds diagnosed Plaintiff with adjustment disorder with disturbance of mood and mild mental retardation. (Doc. 14-2 at 210). Despite his diagnosis of mild mental retardation, Dr. Reynolds nonetheless recommended that Plaintiff complete a job survey inventory to help her decide

15

what occupations she may be interested in and capable of performing and documented that Plaintiff stated that she was capable of doing housework and answering the telephone and would be interested in doing that type of work. (Doc. 14-2 at 213).

In his decision, the ALJ discussed the obvious contradictions in Dr. Reynolds' two assessments [9] and rejected Plaintiff's IQ scores as invalid given the inconsistencies between the scores and the evidence related to Plaintiff's cognitive abilities, her activities of daily living, and her behavior. Specifically, the ALJ noted the inconsistency between Plaintiff's Full Scale IQ score of 67 (indicating mild mental retardation) and Dr. Reynolds' first report in which he clearly opined that Plaintiff could work and had no limitations related to simple instructions and work-related decisions and only mild limitations related to complex instructions and work-related

---

[9] The record shows that the ALJ assigned great weight to Dr. Reynolds' opinion in his first assessment that Plaintiff had essentially average intelligence and little weight to Dr. Reynolds' opinion in his second assessment that Plaintiff's Full Scale IQ score of 67 was valid and that she was mildly mentally retarded. (Doc. 13-2 at 40). Based on the evidence detailed herein, the ALJ had good cause to reject Dr. Reynolds' opinions in the second assessment as they were inconsistent with his own examination findings as well as with Plaintiff's activities of daily living and her behavior. See Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004)(whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record).

decisions. (Doc. 13-2 at 30; Doc. 14-2 at 151-52). In addition, Dr. Reynolds' examination findings in both the first and second assessments were essentially "normal." (Doc. 14-2 at 149, 211; Doc. 13-2 at 29-30). Notably, despite Plaintiff's Full Scale IQ score of 67 in the second assessment, Dr. Reynolds' still recommended that she complete a job survey inventory to assess her employment interests, and noted that she was capable of, and interested in, performing housekeeping and telephone work. (Doc. 14-2 at 213).

The ALJ also pointed to the inconsistency between the Full Scale IQ score of 67 and the evidence that Plaintiff had graduated from high school in regular (not special education) classes, had completed a year and a half of college, and had worked for ten years in semi-skilled work. (Doc. 13-2 at 30, 40, 72; Doc. 14-1 at 3; Doc. 14-2 at 149). The ALJ also discussed Plaintiff's activities of daily living which included independent living, caring for four young children, cooking, house cleaning, laundry, shopping, driving, handling her own finances, and attending church. (Doc. 13-2 at 32). Plaintiff also reported getting along with others and following written and spoken instructions okay. (Doc. 13-2 at 32).

The Court has considered Plaintiff's evidence that she repeated the fifth grade and that she scored at the seventh grade level in reading and at the sixth grade level in spelling

17

and math. (Doc. 14-2 at 212-13). However, notwithstanding this evidence, the substantial medical evidence and evidence of Plaintiff's daily activities and behavior in this case is inconsistent with a finding of mental retardation. Therefore, the ALJ properly found Plaintiff's Full Scale IQ score of 67 to be invalid. Cf., Reid v. Commissioner of Soc. Sec., 2012 U.S. Dist. LEXIS 187808, *18, 2012 WL 7682813, *6 (S.D. Ga. Dec. 14, 2012), *report and recommendation adopted*, 2013 WL 960814 (S.D. Ga. Mar. 12, 2013) (the ALJ's finding that Plaintiff's IQ score was invalid was supported by substantial evidence that Plaintiff lived independently while raising three children and a six-year-old granddaughter; graduated high school without any special services; worked for over ten years as a longshoreman; and had the ability to drive and make financial decisions); Anderson v. Astrue, 2012 U.S. Dist. LEXIS 124827, *14-18, 2012 WL 3834838, *4-6 (D.S.D. Sept. 4, 2012) (the ALJ's decision to discredit Plaintiff's IQ score was supported by substantial evidence that the psychologist who administered the IQ examination only met with claimant on one occasion; there was evidence that claimant's affect and/or motivation difficulties may have affected her performance on the examination; there were no other medical records illustrating claimant's cognitive difficulties; claimant could read and understand short newspaper or magazine articles, count out change; claimant was capable of cooking,

cleaning, and shopping; and while claimant only completed the tenth grade in special education, the record suggested that she discontinued school for personal reasons, not because of mental difficulties).

In summary, the ALJ was not required to find that Plaintiff was mentally retarded based on the results of her IQ test. See Popp, 779 F.2d at 1500. Rather, the ALJ was required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior. Id. Based on the evidence detailed above, there is substantial evidence in the record to support the ALJ's finding that the results of the IQ test lacked validity.

Given the absence of a valid Full Scale IQ score of 60-70 in this case, no further 12.05C analysis was required. See Reid v. Commissioner of Soc. Sec., 2012 U.S. Dist. LEXIS 187808, *18, 2012 WL 7682813, *6 (S.D. Ga. Dec. 14, 2012), *report and recommendation adopted*, 2013 WL 960814 (S.D. Ga. Mar. 12, 2013) ("Without credible, valid IQ scores below 70, the ALJ was not required to find Plaintiff mentally retarded pursuant to Listing 12.05(B) or (C)"). Accordingly, Plaintiff's claim that the ALJ erred in failing to find that she met Listing 12.05C is without merit.

## VII. Conclusion

For the reasons set forth herein, and upon careful

consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

**DONE** this **9th** day of **May, 2017.**

         **/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
